8/28/06

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CASE NO. 3:06CR130 |
| v. | : | |
| **MULTI-SERVICE, INC.** | : | PLEA AGREEMENT |
| | : | |

- - - - - - - - - - - - - - - -

Pursuant to Rule 11(c) of the Federal Rules of Criminal Procedure, **MULTI-SERVICE, INC.** ("**MSI**"), individually and through its attorney, Timothy D. Hoffman, Esquire, and the United States, by counsel, agree as follows:

1. **MSI** will waive indictment and enter a plea of guilty to Counts 1 through 4 of a four-count Information. Count 1 charges MSI with knowingly causing the violation of a pretreatment standard in violation of the Clean Water Act ("CWA"), 33 U.S.C. § 1319(c)(2)(A). Counts 2 and 3 charge MSI with negligently violating two pretreatment standards, in violation of the CWA, 33 U.S.C. § 1319(c)(1)(A). Count 4 charges MSI with knowing transport of hazardous waste without a hazardous waste manifest, in violation of the Resource Conservation and Recovery Act ("RCRA") 42 U.S.C. § 6928(d)(5).

2. The maximum penalty that can be imposed upon conviction of Count 1 is twice the pecuniary gain from the offense or a fine of $500,000, whichever is greater, in accordance with 18 U.S.C. §3571(d), a term of probation of five years, and a $400 special assessment. The maximum penalty that can be imposed upon conviction of Counts 2 and 3 is twice the pecuniary gain from the offenses or a fine of $100,000, whichever is greater, in accordance with 18 U.S.C. §3571(d), not more than five years of probation, and a $125 special assessment. The maximum penalty that can be imposed

upon conviction of Count 4 is twice the pecuniary gain from the offense, or a fine of $500,000, whichever is greater, in accordance with 18 U.S.C. §3571(d), a term of probation of five years, and a $400 special assessment.

    3.    Once said guilty plea is entered, accepted, and not withdrawn, the United States Attorney for the Southern District of Ohio agrees not to charge **MSI** with any additional federal offenses which occurred in the Southern District of Ohio, which were part of the same scheme and course of conduct described in the Information.

    4.    The defendant **MSI** will, at the time the defendant enters its plea of guilty, acknowledge the truth of the attached Statement of Facts.

    5.    The defendant **MSI** agrees to make complete and full restitution to all victims in this case. The defendant understands that the total amount of restitution is a matter left solely to the Court. Furthermore, the defendant acknowledges and understands that MSI will not be permitted to withdraw its guilty plea if MSI disagrees with the amount of restitution ultimately ordered by the Court. This agreement is made pursuant to 18 U.S.C. § 3663(a)(3).

    6.    This Agreement does not resolve any civil liability of the defendant **MSI** for environmental, worker safety, or other regulatory violations. The defendant acknowledges that as part of the complete cooperation promised in this Agreement, the defendant is obligated to comply with all applicable laws and regulations, including consent orders, and to resolve any outstanding Notices of Violation.

    7.    The sentence in this case will be imposed by the Court. The defendant understands that the Sentencing Guidelines are advisory and not mandatory, although the Court is required to consider the Sentencing Guidelines and their application to this case in imposing sentence. Sentencing is within the discretion of the Court, and the defendant understands that the Court may or may not choose to impose sentence based on the applicable sentencing range under the Sentencing Guidelines for the



offense charged in the Information. The defendant has thoroughly reviewed with defendant's attorney how the Sentencing Guidelines might apply to this case. The defendant understands that defendant does not have the right to withdraw defendant's guilty plea if the Court chooses to apply the Sentencing Guidelines including upward departures or otherwise imposes a sentence that is higher than expected. The defendant understands that the matter of sentence is reserved solely to the District Court and that the Court could impose the maximum penalty. No promises or representations have been made to the defendant as to what sentence the Court will impose.

8. The defendant understands that there is no agreement concerning the defendant's ultimate sentence. The defendant could receive the maximum penalty provided by law.

9. The parties agree that the Court will determine the amount of the fine to be paid by Defendant, if any. The defendant understands that the fine is not deductible for federal income tax purposes.

10. Prior to or at the time of sentencing, the defendant will pay to the United States Clerk of Courts, a special assessment in the amount of $1050, as required by Title 18, United States Code, Section 3013.

11. The defendant **MSI** acknowledges that no threats have been made against the defendant and that the defendant is pleading guilty freely and voluntarily because the defendant is guilty. The defendant further acknowledges that MSI understands the nature of the offenses to which MSI is pleading guilty and the penalties provided by law and is completely satisfied with the representation and advice received from counsel.

12. The President of MSI, Melvin L. Tatman, is authorized to enter into this Plea Agreement on behalf of Defendant as evidenced by the Resolution of the Board of Directors of the Defendant which is attached to, and incorporated by reference in, this Plea Agreement.

13. By Melvin L. Tatman signing this agreement, **MSI** acknowledges that he has discussed its terms with its attorney and understands and accepts those terms. Further, the defendant



acknowledges that this document contains the entire plea agreement between defendant, **MSI**, and the United States through its undersigned attorney. No other agreements, promises, deals, bargains or understandings exist which modify or alter these terms. This agreement binds only the United States Attorney's Office of the Southern District of Ohio and does not bind any other federal, state or local prosecuting authority.

14. This is the entire plea agreement. There are no other provisions or understandings. The attached Statement of Facts is hereby incorporated herein.

DATE August 30, 2006

Melvin L. Tatman, President
on behalf of MSI
Defendant

DATE August 30, 2006

TIMOTHY D. HOFFMAN, Esq.
Attorney for MSI

GREGORY G. LOCKHART
United States Attorney

DATE 8/30/06

LAURA T. CLEMMENS
Assistant United States Attorney

4

8/28/06

# Multi-Service

## Statement of Facts

Defendant **MELVIN TATMAN** is the President of **MULTI-SERVICE, INC.** ("MSI"), an Ohio corporation. **MSI** is located at 1962 Radio Road in Dayton, Ohio, which is located in a semi-industrial urban area. As a result of its location, MSI is at the originating point of the sanitary sewer line serving Radio Road. **MSI** is a textile cleaning facility specializing in the reconditioning of commercial and industrial absorbents and is composed of two separate components: an industrial laundry facility; and a dry cleaning operation. The industrial laundering operation produces wastewater which includes heavy metals, waste oil, and organic chemicals.

**MSI** is required to treat its wastewater using a pretreatment system in order to limit the amount of pollutants discharged into the sewer system from the industrial laundry line. This wastewater pretreatment system is permitted and regulated by the City of Dayton, Division of Wastewater.

During the pretreatment process, the pH of the wastewater is lowered to allow the precipitation of solids, and then raised prior to discharge to the sewer system so as to maintain compliance with federal and local pretreatment requirements. A byproduct of the pretreatment process is sludge. If and when the sludge generated by **MSI** is a hazardous waste, it must be disposed of in accordance with the hazardous waste regulations.

**MSI**'s operations produce two discrete discharges, or waste streams. The first waste

- 1 -



stream is ignitable distillation bottom waste from the recovery of dry cleaning fluid and therefore hazardous. **MSI** has historically treated this discharge as hazardous, and has disposed of it accordingly. The second waste stream is wastewater and sludge generated from the laundry operations at the facility, after that discharge passes through the on-site pre-treatment system, which **MSI** has represented to be non-hazardous. The sludge can often be "soupy" or wet. Perma-Fix of Dayton is **MSI**'s waste hauler for both waste streams.

From on or about March 24, 2003, and continuing until on or about May 16, 2003, analysis of sampling results taken by the City of Dayton revealed that the pH of discharges from MSI's industrial laundry line was frequently below 5.0. As defendants **MELVIN TATMAN** and **MSI** were aware, the federal pretreatment standards prohibit the discharge of wastewater with a pH below 5.0 to a POTW. After being advised of the noncompliant discharges by employees, the defendants, **MELVIN TATMAN** and **MSI,** continued to allow discharges to a POTW with a pH below 5.0 to continue from the industrial laundry line of MSI on numerous days, including March 24, 26, 27 and 28; and May 12, 14, 15, and 16, 2003

In approximately March or April 2003, defendants **MELVIN TATMAN** and **MSI** requested that a local wastewater hauling company analyze samples of the waste stream from the industrial laundry operation to determine whether **MSI** could have its wastewater treated off-site by a third party and have it hauled away rather than pre-treating it themselves. After conducting a flashpoint analysis of the two wastewater samples from **MSI** and finding that one of the samples was determined to have a flashpoint below 140 degrees Farenheit, a representative from the hauling company advised **MELVIN TATMAN** and **MSI** that they could not accept their wastewater because **MSI**'s wastewater was hazardous.

- 2 -



On numerous occasions after receiving this information, including May 14, 2003, November 18, 20 and 21, 2003, March 26, 2004, and January 24, 2005, the defendants **MELVIN** and **MSI** negligently discharged and caused the discharge of wastewater with a flashpoint below 140°F from the industrial laundry line of the MSI facility to a POTW.

On May 17, 2002, a routine inspection of **MSI**'s pretreatment system by the City of Dayton revealed a bypass of the pretreatment system. Previously, defendants **MEL TATMAN** and **MSI**, through their agents, told the City of Dayton and the Ohio EPA that this bypass was eliminated in May 2001. After the May 17, 2002 inspection, the City of Dayton ordered MSI to eliminate the bypass by July 2002.

As of August 1, 2002, MSI had not eliminated the bypass and on that date the City of Dayton took action to eliminate the bypass by placing a padlock on the bypass valve.

Beginning in May, 2002 and continuing through on or about August 1, 2002, defendants **MSI and MELVIN TATMAN** negligently allowed the bypass of the pretreatment system associated with the industrial laundry line at the MSI facility.

On or about May 29, 2003, defendant **MSI** sent a shipment of 20 cubic yards of wastewater treatment sludge to the Stony Hollow solid waste landfill for disposal. The Stony Hollow landfill is not permitted to accept hazardous waste. The load of sludge was rejected by Stony Hollow personnel due to excess free liquids in the sludge. When the load was tested by the transporter, it was determined to have a flashpoint below 140 degrees Farenheit, and was returned to **MSI** the next day. Defendant **MEL TATMAN** was advised of the reason for the rejection of the sludge.

On or about June 25, 2003, approximately one month after the first load of sludge was

- 3 -

rejected, defendant **MSI** contracted with another waste hauling company to transport 3,500 gallons of sludge. The sludge had the same distinctive look and solvent smell as the rejected load. Despite the knowledge of the prior rejected load, defendant MSI failed to test the load, failed to prepare a manifest for shipment of hazardous waste, and attempted to ship the sludge to a landfill that was not licensed to accept hazardous waste. Once again, the sludge was tested by the waste hauling company, found to have a flashpoint below 140 degrees Farenheit, and was returned to **MSI**.

For the information of the court, a "bypass" is defined as an "intentional diversion of wastestreams from any portion of an Industrial User's treatment facility." See 40 C.F.R. § 403.17(b).

For the information of the court, "pH" is a measurement of the acidity or alkalinity of wastewater, which can affect the integrity of the sewer system and the POTW physical plant, as well as the ability of the microorganisms used in the treatment process to thrive and perform their vital metabolic role

For the information of the court, certain wastes are deemed hazardous by exhibiting a particular characteristic, including ignitability. 40 CFR §261.20. A solid waste exhibits the characteristic of ignitability if it is a liquid and a representative sample of that liquid has a "closed cup flash point" of less than 60 degrees C or 140 degrees F. See 40 CFR § 261.21(a).

# JOINT ACTION BY WRITTEN CONSENT OF SHAREHOLDERS AND DIRECTORS OF MULTI-SERVICE, INC.

Dated: AUG. 30, 2006

WHEREAS, the United States Government has asserted criminal charges against the Corporation for violations of the Federal Water Pollution Control Act and the Resource Conservation and Recovery Act in the Dayton, Ohio area; and

WHEREAS, the United States has offered a plea agreement whereby the Corporation shall plead guilty to a four count Information; and

WHEREAS, the Corporation believes it is in its best interests to accept such a plea.

NOW, THEREFORE, it is resolved, that the Corporation shall enter a plea of guilty to a four-count Bill of Information charging violation of 33 U.S.C. §§1319(c)(1) and (c)(2), and 42 U.S.C. 6928(d)(5) as discussed above.

RESOLVED FURTHER, that Melvin L. Tatman, as the Corporation's President, is hereby authorized to execute on behalf of the Corporation and deliver such documents necessary to consummate the plea and any related matters as he deems appropriate under the circumstances.

IN WITNESS WHEREOF, this resolution shall be effective this 30th day of AUGUST, 2006.

SHAREHOLDERS:

_Melvin L Tatman_
SOLE SHAREHOLDER

DIRECTORS:

_Melvin L Tatman_

_Leslie Dewey Tatman_